UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------- X
                                              :

**WILLIAM ALEXANDER**,

                              Petitioner,

              – against –

**RAYMOND COVENY** and **LETITIA JAMES**,

                             Respondents.

----------------------------------------------------------------- X

**MEMORANDUM DECISION AND ORDER**

21-CV-1006 (AMD)

**ANN M. DONNELLY**, United States District Judge:

The petitioner, currently incarcerated at the Elmira Correctional Facility, petitions for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The petitioner was convicted after a jury trial in Kings County Supreme Court for a December 29, 2012 gunpoint robbery. (*See* Trial Transcript ("T. Tr.") 19–20.)[1] He is serving concurrent prison terms of 25 years for robbery and 15 years for criminal possession of a weapon. The petitioner argues that the trial court violated his rights to a fair trial and to present a complete defense when it did not permit him to introduce his arrest photograph into evidence. For the following reasons, the petition is denied.

## BACKGROUND

**I.**     **Trial**

       **a.**     **The Prosecution's Case**

The prosecution called five witnesses: Yudka Veras-Diaz, Carlos Villafane, New York Police Officers Remel Thomas and Officer Kevin Hutchinson, and NYPD Detective Salvatore Scaturro. Their testimony established the following facts.

---

[1] The trial transcript can be found at ECF No. 5-1.

On December 29, 2013, at approximately 1:55 p.m. Yudka Veras-Diaz was walking on Atlantic Avenue in Brooklyn, when the petitioner, a Black man in a yellow hoodie and a blue vest, rode up to her on a small bicycle. (*Id.* at 31–33, 51–53.)[2] The petitioner ordered her to give him "the money," pulled out a gun, and held it to her side. (*Id.* at 33–34.) She opened her purse and gave him $40 — one $20 bill and two $10 bills. (*Id.* at 34.) He also tried to grab her purse, but she held on to it and pulled away. (*Id.* at 34–35)

Carlos Villafane was driving nearby on Atlantic Avenue and saw the petitioner and Ms. Veras-Diaz wrestling for Ms. Veras-Diaz's purse. (*Id.* at 50–51.) He stopped his car, and the petitioner rode away on his bicycle. (*Id.* at 51.) Ms. Veras-Diaz told Mr. Villafane that "she got robbed at gunpoint." (*Id.* at 53.) She got in Mr. Villafane's car, and they followed the petitioner at "a safe distance." (*Id.*) As he drove, Mr. Villafane called 911 and told the operator that a Black man on a bicycle wearing a yellow hoodie and a blue vest had just robbed a woman at gunpoint. (*Id.* at 53–55, 65.)

In the meantime, Officer Thomas and his partner for the day, Officer Jordan, were sitting in their patrol car nearby when Officer Thomas heard the radio transmission reporting the robbery and the description, which included that the robber was wearing a yellow hoodie and a blue vest. (*Id.* at 72–73.) At that point, the petitioner, still wearing the yellow hoodie and blue vest, rode past the officers and made "eye contact" with them. (*Id.* at 73–74.) Officer Thomas put on his turret lights, made a U-turn and followed the petitioner. (*Id.* at 74.) He activated his siren when he got close, and the petitioner jumped off his bike and threw a gun to the ground. (*Id.* at 75.) While Officer Jordan held the petitioner at gunpoint, Officer Thomas searched the petitioner and found a $20 bill and two $10 bills in his pocket. (*Id.* at 79.) Mr. Villafane and

---

[2] Ms. Veras-Diaz identified the petitioner in court.

Ms. Veras-Diaz arrived. (*Id.* at 68.) Mr. Villafane recognized the petitioner as the man he saw struggling with Ms. Veras-Diaz: "He was wearing the exact same clothes. The bike was on the sidewalk with him, and everything. (*Id.*) Ms. Veras-Diaz identified the petitioner as the person who robbed her. (*Id.* at 36–37.) Officers took the petitioner to the police precinct and processed the arrest. (*Id.* at 105–06.)

> i. *The Petitioner's Motion to Introduce the Arrest Photograph at Trial*

On cross-examination, defense counsel showed Mr. Villafane the petitioner's arrest photograph;[3] Mr. Villafane said, "Yes, that's him." (*Id.* at 67.) Counsel asked, "Who do you recognize that to be?" (*Id.*) Mr. Villafane responded, "As the suspect, but that is not the clothes he was wearing. Absolutely not the clothes he was wearing, unless he changed somehow. He had a yellow. It is a big difference from yellow to that color. It was yellow, and a blue vest actually." (*Id.*) Defense counsel also cross-examined Officer Thomas about the arrest photograph. (*Id.* at 105–07, 115.) Officer Thomas testified that he recognized the person in the photograph as "the [petitioner] dressed in different clothes." (*Id.* at 106.)[4]

At that point, counsel asked the court to admit the photograph into evidence, on the ground that it was evidence of mistaken identification because the petitioner's clothing in the photograph did not match the clothing that the victim, the eyewitness and the arresting officer described. (*Id.* at 107–08). The court did not "see how it's relevant if both witnesses indicated this wasn't the clothing he was wearing." (*Id.* at 108–09). After further argument, the court denied the application because the defense had not "sufficiently established how it's probative;"

---

[3] In the arrest photograph, the petitioner was wearing a grey hoodie and a maroon jacket and scarf, not a yellow hoodie and blue vest. (ECF 1-5 at 21.)

[4] Officer Thomas also said that the petitioner "was wearing multiple clothes that he could have exchanged." (T. Tr. at 106.)

3

the court observed, "Maybe if your client wants to take the stand, he could testify as to how he looked and if these were his clothes." (*Id.* at 113.) The court ruled that it would admit the photograph only "[i]f there is some kind of sponsoring testimony that this was the clothing that he was wearing and they arrested the wrong guy, and these three witnesses were under some mass delusion." (*Id.*)

      **b.**      **The Defense Case**

Counsel moved again to admit the arrest photograph on the defense case. Citing *Chambers v. Mississippi*, 410 U.S. 284 (1973), counsel invoked the petitioner's constitutional right to a fair trial and to present a complete defense. He argued that excluding the photograph was "improper because it was relevant to a material issue of identification that was part of the Defense case." (*Id.* at 167–69.) The court denied the request, explaining, "I know of no supreme court, United States Supreme Court, or Court of Appeals, or Appellate Division law that says that the fundamental rulings of evidence are to be twisted into an unrecognizable shape, to allow a defendant to present a defense." (*Id.* at 170–71.) Commenting that "[a]ll defenses that are presented must comply with the rules of evidence," the court found that the defense had "failed to establish a sponsoring witness to establish the introduction of the photograph." (*Id.* at 171.) The court also said that the defense was "asking the jury to speculate" because the photograph was "taken after the defendant was in custody at a police station, without knowing the time, just showing that the defendant had different clothes on, [which] does not go to the complainant's ability to recognize the defendant's face." (*Id.* at 167–72.)

The defense called Kendra Hardy, a criminalist from the Office of the Chief Medical Examiner. Her testimony established that there was a mixture of DNA from three people on the

4

gun. (*Id.* at 190–91.) She explained that it was 367 times (99.7%) more likely that someone other than the petitioner had handled the gun. (*Id*. at 194.)

## II. Verdict and Sentence

On December 3, 2014, the jury convicted the petitioner of first-degree robbery (N.Y. Penal Law § 160.15) and second-degree criminal possession of a weapon (N.Y. Penal Law § 265.03). (*Id.* at 350.) On December 23, 2014, the petitioner was sentenced as a second violent felony offender to concurrent prison terms of 25 years for the robbery and 15 years for the weapon possession, to be followed by concurrent five-year terms of post-release supervision on each count. (Sentencing Transcript ("S. Tr.") 1–11.)[5]

## PROCEDURAL HISTORY

### I. Direct Appeals

On direct appeal to the Appellate Division, Second Department, the petitioner claimed that the trial court deprived him of the right to present a complete defense under the Sixth and Fourteenth Amendments of the Constitution when it denied his application to admit the arrest photograph into evidence. (*See* ECF No. 5-2 at 6–7.) He also challenged his sentence as excessive. (*Id.*)

In affirming the petitioner's conviction, the Second Department did not address the Sixth and Fourteenth Amendment claims. Instead, the court held that the petitioner had not laid the proper foundation for the arrest photograph, and that in any event, any error was harmless. (ECF No. 1-4 at 27.) The court also rejected the petitioner's excessive sentence claim. (*Id.* at 28.)

The New York Court of Appeals denied the petitioner's application for leave to appeal on June 27, 2019. (ECF No. 1-5 at 20.)

---

[5] The sentencing transcript can be found at ECF No. 5-1, beginning at page 543.

The United States Supreme Court denied certiorari on February 24, 2020.  (*Id.* at 72–73.)

## II.     Federal Habeas Petition

The petitioner filed this petition on February 24, 2021.  (ECF No. 1.)  He argues the trial court's decision to exclude his arrest photograph violated New York evidentiary law, that the error was not harmless, and that it "deprived [him] of his right to present a complete defense and of a fair trial."  (ECF No. 1-3 at 14–15.)

## LEGAL STANDARD

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") limits the authority of federal courts to grant writs of habeas corpus to state prisoners.  Section 2254(a) permits a federal court to entertain only those applications claiming violations "of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  Sections 2254(b) and (c) prevent a federal court from granting the writ if the applicant has not exhausted state remedies.

A petitioner can seek federal habeas corpus relief only after he exhausts his state court remedies and gives the state court a fair and full opportunity to review the merits of the claim.  28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999).  In other words, a petitioner must present "the essential factual and legal premises of his federal constitutional claim to the highest state court capable of reviewing it."  *Jackson v. Conway*, 763 F.3d 115, 133 (2d Cir. 2014) (quoting *Rosa v. McCray*, 396 F.3d 210, 217 (2d Cir. 2005)).

Even when issues are properly before a federal court, AEDPA's standards are "difficult to meet" because the Act provides a "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt."  *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (citations omitted).  Accordingly, a federal court may not

"review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman v. Thompson*, 501 U.S. 722, 729 (1991). This bar applies to substantive and procedural state law grounds alike. *Id.* at 729–30.

As for claims that have been "adjudicated on the merits in State court proceedings," a federal court may not issue a writ of habeas corpus unless the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law" or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Cullen*, 563 U.S. at 181 (quoting 28 U.S.C. § 2254(d)). Federal court review "is limited to the record that was before the state court that adjudicated the claim on the merits," and "the petitioner carries the burden of proof." *Id.* at 180–81.

When a state court "(1) disposes of the claim 'on the merits,' and (2) reduces its disposition to judgment," "a federal habeas court must defer in the manner prescribed by 28 U.S.C. § 2254(d)(1) to the state court's decision on the federal claim — even if the state court does not explicitly refer to either the federal claim or to relevant federal case law." *Sellan v. Kuhlman*, 261 F.3d 303, 312 (2d Cir. 2001). For example, a state court ruling simply that a claim is "without merit" constitutes an adjudication on the merits of that claim. *Jimenez v. Walker*, 458 F.3d 130, 146 (2d Cir. 2006) (citing *Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 810–11 (2d Cir. 2000)). In such a case, "the federal court will focus its review on whether the state court's ultimate decision was an 'unreasonable application' of clearly established Supreme Court precedent." *Sellan*, 261 F.3d at 311–12.

For the purposes of federal habeas review, "clearly established Federal law" means "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the

7

relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). A state court decision is "contrary to" or an "unreasonable application of" clearly established law if the decision: (1) is contrary to Supreme Court precedent on a question of law; (2) arrives at a conclusion different than that reached by the Supreme Court on "materially indistinguishable" facts; or (3) identifies the correct governing legal rule but unreasonably applies it to the facts of the petitioner's case. *Id.* at 412–13. The court reviews the last reasoned state court decision. *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991); *Jones v. Stinson*, 229 F.3d 112, 118 (2d Cir. 2000). The state court's factual determinations are presumed to be correct, and the petitioner bears the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

## DISCUSSION

The petitioner argues that the trial court violated his right to present a complete defense when it refused to admit his arrest photograph into evidence.

"The right of an accused in a criminal trial to due process is, in essence, the right to a fair opportunity to defend against the State's accusations." *Chambers v. Mississippi*, 410 U.S. 284, 294 (1973). Whether this right is "rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation Clauses of the Sixth Amendment," it "guarantees criminal defendants a meaningful opportunity to present a complete defense." *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006) (quoting *Crane v. Kentucky*, 476 U.S. 683, 690 (1986)).

The right to present a complete defense is, however, subject to a state's "broad latitude under the Constitution" to "establish rules excluding evidence from criminal trials," as long as these rules do not "infringe upon a weighty interest of the accused" and are not "arbitrary or

disproportionate to the purposes they are designed to serve." *Id.* at 324–25 (alterations and internal quotation marks omitted).

Habeas relief generally "does not lie for errors of state law," including "erroneous evidentiary rulings." *Hawkins v. Costello*, 460 F.3d 238, 244 (2d Cir. 2006) (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)) (internal citations omitted). Habeas relief for erroneous state law evidentiary rulings is not warranted unless the error deprived the defendant of a fundamentally fair trial in violation of the Constitution. *See Estelle v. McGuire,* 502 U.S. 62, 72–73 (1991); *Scrimo v. Lee*, 935 F.3d 103, 114–15 (2d Cir. 2019) ("However, when a trial court's evidentiary exclusions take on constitutional dimensions . . . 'we must examine the stated reasons for the exclusion and inquire into possible state evidentiary law errors' that may have deprived the petitioner of a fair trial." (quoting *Washington v. Schriver*, 255 F.3d 45, 57 (2d Cir. 2001))). "Specifically, whether the exclusion of [evidence] violated [the petitioner's] right to present a defense depends upon whether the omitted evidence evaluated in the context of the entire record creates a reasonable doubt that did not otherwise exist." *Stinson*, 229 F.3d at 120 (cleaned up).

The Second Department held that the trial court's decision to exclude the petitioner's arrest photograph was proper because "the defendant failed to lay a sufficient foundation for its admission," and that "even if [the exclusion of the photo] was erroneous, the failure to admit [it into evidence] was harmless, as the proof of the defendant's guilt was overwhelming." (ECF No. 1-4 at 27.)[6]

---

[6] The Court reviews the Second Department's rationale for rejecting the petitioner's claim as it is the last reasoned state court decision. *Ylst*, 501 U.S. at 804; *Stinson*, 229 F.3d at 118. The parties disagree over whether the Second Department's harmless-error determination constitutes an adjudication on the merits of the petitioner's federal constitutional claim. In an abundance of caution, the Court adopts the petitioner's argument and assumes without deciding that the Second Department's holding was not an adjudication on the merits. Accordingly, the Court does not apply AEDPA deference to the Second

9

Habeas relief is not warranted here because excluding the petitioner's arrest photograph did not deprive the petitioner of a fundamentally fair trial in violation of the Constitution. *See Estelle,* 502 U.S. at 72; *Stinson*, 229 F.3d at 120 (citing *Chambers,* 410 U.S. at 302–03). When "potentially exculpatory evidence was erroneously excluded," a federal habeas court "must look to whether the omitted evidence evaluated in the context of the entire record creates a reasonable doubt that did not otherwise exist." *Scrimo*, 935 F.3d at 115 (quoting *Washington*, 255 F.3d at 57.

A review of the record establishes that the arrest photograph would not have "create[d] a reasonable doubt that did not otherwise exist." *Stinson*, 229 F.3d at 120 (cleaned up). The defense was misidentification, which was buttressed by the fact that in the arrest photograph the petitioner was not wearing the distinctive clothing that the witnesses described. The jury heard that evidence.

Counsel showed the photograph to Mr. Villafane, the eyewitness who saw part of the robbery and brought the victim to the arrest scene, and to Officer Thomas, who arrested the petitioner as he fled.[7] Both witnesses testified that the petitioner's clothing in the arrest photograph was different than what he wore during the crime and at the arrest minutes later. (*See* T. Tr. 67, 105–06, 115.) When counsel showed Mr. Villafane the petitioner's arrest photograph, Mr. Villafane testified that he recognized the petitioner as the person he saw struggling with the victim, but that "[a]bsolutely [was] not the clothes he was wearing, unless he changed somehow," because he had been wearing "yellow, and a blue vest" during the robbery.

---

Department's decision and instead applies the standard under *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) — determining whether the claimed evidentiary error had a "substantial and injurious effect or influence" on the verdict. In other words, the Court determines whether the error created reasonable doubt that did not otherwise exist.

[7] Defense counsel did not ask the robbery victim about the arrest photograph.

(*Id.* at 67.) Counsel also showed the photograph to Officer Thomas, who testified that he recognized the person in the photograph as "the [petitioner] dressed in different clothes." (*Id.* at 105–06, 115.) Thus, while the jurors did not see the photograph itself, they knew that it showed the petitioner in clothing that did not match the witnesses' description.

Moreover, counsel discussed the significance of the photograph at length in her summation:

> Colors of the clothing in this case are really important, because you heard testimony on cross-examination of the People's witness, Officer Thomas, the only officer at the scene that testified in this case, about a photo that was taken at the police precinct shortly after Mr. Alexander's arrest. And upon cross-examination he was shown that photograph. And you heard him testify that Mr. Alexander was wearing a hoodie and a ski vest in that photo, but the colors were different. . . . Now, on cross-examination we showed Mr. Villafane a photo of Mr. Alexander. And he testified that it was Mr. Alexander, but it wasn't the same color of clothing, it was a big difference. . . . There was a big difference from yellow, big difference from yellow to the color of the clothing in the photo.

(*Id.* at 264–65, 270–71.) This evidence showed, according to counsel, that the petitioner "was biking in the vicinity of Fulton Avenue, but he wasn't the robber." (*Id.* at 271.)[8] Under these circumstances, even if it was error to preclude the photograph, the petitioner was able to present his defense — that at the precinct he was wearing clothing that did not match what the witnesses said about the perpetrator. *See Washington v. Schriver*, 90 F. Supp. 2d 384, 390 (S.D.N.Y. 2000) (on habeas review, finding that "[e]ven if was error for the trial court to exclude petitioner's proposed expert testimony, such error was rendered harmless by the fact that the defendant was nevertheless able to put the issue before the jury" during cross-examination and in summation);

---

[8] In seeking habeas relief, the petitioner advances a different defense: that he was not the person that the police arrested for the robbery, and that the police somehow substituted him for the real robber. This was not the defense theory at trial, and there is no factual support for it in the record.

11

*Fernandez v. Sheahan*, No. 12-CV-2735, 2015 WL 4771958, at *6 (E.D.N.Y. Aug. 11, 2015) (state court evidentiary ruling did not create a reasonable doubt where trial counsel was otherwise able to raise issue sought to be addressed by excluded evidence). Thus, any error in the trial court's ruling was harmless.

That is especially true given the strength of the evidence against the petitioner. The entire incident — from robbery to arrest and identification — took only a few minutes. The petitioner, wearing a yellow hoodie and blue vest, robbed Ms. Veras-Diaz on a busy street in the middle of the day. Mr. Villafane saw the petitioner trying to wrestle Ms. Veras-Diaz's bag from her. He described the petitioner to the 911 operator, and he and Ms. Veras-Diaz followed the petitioner as he rode away on his bike. (*Id.* at 53–55.) Officer Thomas, who heard the description of the robber over the radio, saw the petitioner ride by, wearing the clothing described in the radio run. (*Id.* at 73–76.) He and another officer stopped the petitioner after he abandoned his bike and threw his gun to the ground. Not only was he carrying a gun, he also had a twenty-dollar bill and two tens — just what had been stolen from Ms. Veras-Diaz. (*Id.* at 79.) Ms. Veras-Diaz identified him within minutes of the robbery and again at trial. (*Id.* at 36–37.) Mr. Villafane identified him at trial from the arrest photograph, as did Officer Thomas. (T. Tr. 36–37, 79.)

On this record, admission of the petitioner's arrest photograph would not have "create[d] a reasonable doubt that did not otherwise exist." *Stinson*, 229 F.3d at 120 (cleaned up). Habeas relief is thus not available to the petitioner.

## CONCLUSION

For these reasons, the petition is denied in its entirety. The case is dismissed. A certificate of appealability will not be issued. *See* 28 U.S.C. § 2553(c).

**SO ORDERED.**

s/Ann M. Donnelly

ANN M. DONNELLY
United States District Judge

Dated: Brooklyn, New York
       November 4, 2024